STAT-TECH LIQUIDATING TRUST, et al., Plaintiffs,

v.

Raynard M. FENSTER, et al., Defendants.

VBW PARTNERS, LTD., a Colorado limited partnership, and TRW Family Partners, Ltd., a Colorado limited partnership, Plaintiffs,

v.

Rodger THORNTON, Raynard M. Fenster, Hayden H. Thompson, Therese M. Lamb, and Schneider Securities, Inc., a Colorado corporation, Defendants.

PROACTIVE PARTNERS, L.P., a California limited partnership and Lagunitas Partners, L.P., a California limited partnership, Plaintiffs,

v.

Raynard M. FENSTER, Hayden H. Thompson, Therese M. Lamb, Rodger Thornton, and Schneider Securities, Inc., a Colorado corporation, Defendants.

Civil Action Nos. 92–K–1040, (92–K–1994, 92–K–2368, 92–K–2441, 93–K–308, 95–K–1367).

United States District Court, D. Colorado.

July 18, 1997.

---

**1330**

Tim Atkeson, Arnold & Porter, Denver, CO, for plaintiffs.

Jay S. Horowitz, Kim E. Ikeler, Krendl, Horowitz & Krendl, Steven M. Feder, Bader & Villanueva, P.C., Denver, CO, for defendants.

## ORDER ON MAGISTRATE'S JUNE 9, 1997 RECOMMENDATION

KANE, Senior District Judge.

These related securities fraud cases are before me on various objections under Fed. R.Civ.P. 72(b) to the June 9, 1997 Recommendation of Magistrate Judge Pringle. The Magistrate Judge recommended, *inter alia,* that (1) Defendant Schneider Securities' Resubmitted Motion for Summary Judgment in No. 92–K–1994 be granted as to Plaintiffs' aiding and abetting claims under the Colorado Securities Act, but denied in all other respects; and (2) Defendant Hayden H. Thompson's Motion for Summary Judgment in Nos. 92–K–1040, 92–K–1994 and 92–K–2441 be denied.

After careful review of the objections and responses thereto, as well as the briefs upon which the Recommendation was based, I sustain in part the objections of Defendant Hayden Thompson and the Plaintiffs in Nos. 92–K–1040, 92–K–1994 and 92–K–2441 and overrule the objections of Schneider Securities in No. 92–K–1994. With the modifications explained below, I adopt the Recommendation of the Magistrate Judge as an order of the court for the reasons stated therein.

### I. *Defendant Thompson's Objections.*

In his June 9 order, the Magistrate Judge recommended that Defendant Thompson's motion for summary judgment on the Trust's claims in 92–K–1040, the claims of VBW/TRW in 92–K–1994 and the Proactive Plaintiffs in 92–K–2441 be denied. The Magistrate Judge found sufficient evidence of *scienter* in the record to support the state and federal securities fraud claims of Stat–Tech, Proactive and VBW against Thompson, but found the Trust had failed to adduce sufficient evidence of reliance to withstand summary judgment on its claim for damages based on Defendants' alleged violations of the federal securities laws. Based on a perceived distinction between Colorado and federal securities law after *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095 (Colo. 1995), the Magistrate Judge recommended the Trust's claim based on violations of the Colorado Securities Act be allowed to proceed to trial. In addition, the Magistrate Judge recommended that Plaintiffs' negligent misrepresentation claims proceed to trial. I review these matters *de novo.*

### A. *The Trust's damage claim.*

One of the Trust's claims in this case is for the value of the claims asserted in the Stat–Tech bankruptcy proceeding by shareholders for the lost value of their stock. As the Magistrate Judge noted in his Recommendation, this claim is difficult conceptually because of the procedural posture in which it is presented. *See* Recommendation at 30, n. 7. While the claim resembles an indemnity action, the nature and amount of the underlying liability has not been determined.[1] Analytically, the claim has been treated as a representative action with the Trust standing in the shoes of the individual claimant-shareholders pursuing various corporate claims against Defendants.

The question presented concerns the Trust's inability to prove individual shareholder reliance on the 1989 10–K forming the principal basis of its claims against Thompson. The Trust originally hoped to avail itself of a "fraud-on-the-market" presumption of reliance, but the Magistrate Judge rejected this presumption based on the Trust's failure to present evidence to support it.

---

1. The shareholder claims for which recovery is sought have not been litigated or even challenged in the bankruptcy case. Rather than incur the expense of investigating and challenging those claims in the bankruptcy proceeding, the Trust sought, and obtained leave, to postpone doing so pending the outcome of its action against Defendants in the district court. Since then, the Trust moved to close the bankruptcy case, reserving its right to reopen the case should the district court litigation result in a recovery for the Trust. The motion was granted by Judge Brooks last month. In some respects, then, the Trust's damage claim also resembles a declaratory judgment action.

The Magistrate Judge went on to consider and apply, *sua sponte*, the material omission presumption of reliance recognized by the Supreme Court in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

In *Affiliated Ute*, the United States Supreme Court recognized a limited presumption of reliance in cases involving material omissions where the nature of the relationship between plaintiff and defendant gives rise to an affirmative duty to disclose. Finding the Tenth Circuit had never definitively considered how the presumption would apply in cases where, as here, both affirmative misrepresentations and omissions were alleged, the Magistrate Judge looked to caselaw from other circuits and determined that, as a matter of federal law, the presumption was limited to cases primarily involving concealment.[2] Because the Trust's claims are premised primarily on affirmative misrepresentations in the 1989 10–K, and not omissions, the Magistrate Judge concluded the Trust could not avail itself of the *Affiliated Ute* presumption in conjunction with its federal securities claims.

Turning to the Trust's state securities claims, the Magistrate Judge looked to the Colorado Supreme Court's "refus[al] to recognize a misstatement/omissions dichotomy" in *Rosenthal* to conclude Colorado courts "would apply the *Affiliated Ute* presumption to any case where omissions are alleged." Accordingly, the Magistrate Judge recommended the Trust's claim for stockholder-claimant damages under the Colorado Securities Act be permitted to proceed to trial. Recommendation at 35.

While I have made no secret of my concerns regarding the double standards articulated in *Rosenthal* for pleading state and federal securities claims, I disagree the Colorado Supreme Court created such a standard for the application of the *Affiliated Ute* presumption of reliance. I read the *Rosenthal* decision as applying a narrow, not broad, interpretation of *Affiliated Ute*. In fact, the court in *Rosenthal* went beyond where many federal courts have been willing to go and

found the presumption "totally inapplicable" where, as there, the alleged omissions occurred during market transactions between purchasers and brokers, and not in the context of a "relationship of trust and confidence." 908 P.2d at 1103.

I find the Colorado Supreme Court "refuse[d] to recognize a misstatements/omissions dichotomy" in the application of *Affiliated Ute* not because it favored a broader application of the presumption, but because it found " '[t]he labels by themselves [to be] of little help' " in determining whether a case involved primarily misstatements or omissions. *Rosenthal*, 908 P.2d at 1104 (quoting *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 93 (2d Cir.1981)). " 'What is important,' " the Court continued, " 'is to understand the rationale for a presumption of causation in fact in cases like *Affiliated Ute*, in which no positive statements exist: reliance as a practical matter is impossible to prove.' " *Id.*

In *Wilson*, the case upon which the Colorado Supreme Court relied to analyze *Affiliated Ute*, the facts were deemed not to support an application of the presumption because positive statements did exist and reliance, as a practical matter, was not impossible to prove. 648 F.2d at 88 (oral financial projections reaffirmed in written report formed primary basis of plaintiff's claims and did not give rise to *Affiliated Ute* presumption notwithstanding allegations of nondisclosure based on defendant's failure to correct them). *Wilson*, 648 F.2d at 93. A similar situation exists here. The Trust's fraud claims against Thompson are based primarily on the misleading financial projections and information affirmatively set forth in the 1989 10–K. Reliance on such information is not impossible to prove, as is apparent from the other Plaintiffs' ability to withstand summary judgment on their federal and state securities claims.

Based on the Trust's inability to fit within the rationale of *Affiliated Ute* articulated by the Colorado Supreme Court in *Rosenthal*, I conclude Colorado courts would not allow the Trust to avoid having to present reliance

---

2. The Magistrate Judge may have overlooked the Tenth Circuit's decision in *Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151, 1162–63 (10th Cir.1989), which also characterized the *Affiliated Ute* presumption as being limited to "case[s] primarily rest[ing] on a failure to disclose."

evidence to support its Colorado Securities Act claims. Accordingly, I modify the Magistrate Judge's Recommendation to grant Thompson's motion to strike that aspect of the Trust's damages claim that would allow it to recover for the devaluation of the shareholder-claimants' stock under either a federal or state securities fraud theory of relief.

### B. The "negligent misrepresentation" claims.

■ In addition to their securities fraud claims, Plaintiffs Trust, VBW and Proactive assert common law claims for fraud, breach of fiduciary duty and negligent misrepresentation against Thompson based on his signing of the 1989 10–K containing misrepresentations upon which Stat–Tech investors allegedly relied. Thompson argues the negligent misrepresentation claim should be barred where, as here, the alleged misrepresentation was made in connection with the purchase or sale of securities. To impose liability for such conduct on a theory of simple negligence, Thompson reasons, would subject an outside director to a higher standard of care than that imposed by the federal securities laws.

The Magistrate Judge rejected Thompson's argument. Citing Thompson's failure to provide authority to the contrary, the Magistrate Judge reasoned Colorado could impose a higher standard of care on corporate officers and directors in connection with securities transactions than that imposed by Congress, and declined to disallow the claim. The Magistrate Judge concluded Colorado courts would recognize a claim for negligent misrepresentation in the context of an outside director who signs a federally mandated disclosure form containing materially false representations.

While I agree Plaintiffs' negligent misrepresentation claims needn't fall with their securities claims,[3] the question of whether they survive as a matter of law on other grounds requires further explication.

■ Under Colorado law, corporate directors are fiduciaries and are liable for " 'losses of the corporation caused by their bad faith or willful and intentional departure

from duty, their fraudulent breaches of trust, their *gross or willful negligence,* or their ultra vires acts.' " ( *Holland v. American Founders Life Ins. Co.,* 151 Colo. 69, 376 P.2d 162, 165–66 (1962) (quoting 19 *C.J.S.* Corporations, § 764, p. 114)) (emphasis added). This is different from the personal liability imposed on negligent suppliers of information under the Restatement (Second) of Torts, § 552.

■ To the extent Plaintiffs' claims are brought on behalf of the corporation or, derivatively, on behalf of its shareholders, they are corporate claims that must be analyzed under the standard set forth in *Holland.* Under *Holland,* Thompson will not be liable to the Trust or to any of the shareholder-claimants for conduct short of gross or willful negligence.

Alternatively, Plaintiffs VBW and Proactive claim they are entitled to maintain a personal action against Thompson for negligent misrepresentation based on Thompson's sale to them of his personal shares of Stat–Tech stock. I conclude these Plaintiffs' will having standing to pursue such an action only if they prove they suffered harm distinct and separate from the harm suffered by the corporation and its shareholders generally.

■ As a general rule, a stockholder cannot maintain a personal action against a director whose action causes harm to the corporation. *In re Stat–Tech,* 47 F.3d 1054, 1060 (10th Cir.1995) (citing *Nicholson v. Ash,* 800 P.2d 1352, 1356 (Colo.App.1990)). This is because that action belongs to the corporation, and must be brought by it. *Id.* However, Colorado courts recognize an exception to the general rule when " 'the actions of the third party that injure the corporation ... cause him injury as a stockholder, unique to himself and not suffered by the other stockholders.' " *In re Stat–Tech* at 1060 (quoting *Nicholson* at 1357). Thus, to have standing to pursue a personal action against a director, a shareholder-plaintiff must prove losses different from the loss sustained by the corporation and shareholders generally. *Id.* at 1059.

---

**3.** *See Christy v. Cambron,* 710 F.2d 669, 672 (10th Cir.1983)(dismissal of plaintiffs' federal securities claims neither precluded nor deprived the court of jurisdiction over plaintiffs' common law claims against corporate directors).

Because this standing issue was first raised in Thompson's reply brief in support of his motion for summary judgment against VBW and was not addressed by the Magistrate Judge, I decline to decide it now. Suffice it to say that the personal actions of VBW and Proactive against Thompson will not be submitted to the jury without evidence that Thompson's conduct injured them in ways unique to them and not suffered by the other stockholders.

With these modifications, the Magistrate Judge's recommendation with respect to Defendant Thompson's motion for summary judgment on the claims of Stat–Tech/Trust, Proactive and VBW is accepted and adopted as an order of the court.

### II. *The Objections of Plaintiffs Trust and Proactive.*

Plaintiffs Trust and Proactive object to the Magistrate Judge's Recommendation to the extent they understand it to have disallowed the Trust's damage claim on behalf of Stat–Tech stockholders under a breach of fiduciary duty theory. I do not read the Recommendation to have done so, and expect my comments above at § I(B) have clarified the issue. The Trust's breach of fiduciary duty claim, to be analyzed under the Holland standard, remains intact and may entitle the Trust to recover damages on behalf of the corporation and its shareholders.

### III. *The Objections of Schneider Securities.*

Schneider Securities objects to the Magistrate Judge's Recommendation in No. 92–K–1994 that certain aspects of its motion for summary judgment be denied. Because I find Schneider's arguments to be a rehash of issues fully and correctly considered by the Magistrate Judge, I adopt the Recommendation as to the disposition of Schneider's motion as an order of the court without modification.

With the foregoing modifications, IT IS ORDERED that the Magistrate Judge's June 9, 1997 Recommendation is ACCEPTED and ADOPTED as an order of the court. Accordingly,

1. The Motion of Schneider Securities, Inc. to Dismiss for Failure to File Certificate of Review in No. 92–K–1994 is DENIED;

2. Schneider Securities' Resubmitted Motion for Summary Judgment in 92–K–1994 is GRANTED as to Plaintiffs' aiding and abetting claims under the Colorado Securities Act but DENIED in all other respects; and

3. Defendant Hayden H. Thompson's Motion for Summary Judgment in Nos. 92–K–1040, 92–K–1994 and 92–K–2441 be GRANTED as to the Trust's damage claim in 92–K–1040 to the extent that claim is based on violations of the federal and state securities laws but DENIED in all other respects.

### RECOMMENDATION OF UNITED STATES MAGISTRATE

PRINGLE, United States Magistrate Judge.

This matter comes before the Court on the following dispositive motions: Schneider Securities' Motion to Dismiss for Failure to File a Certificate of Review; Schneider Securities' Resubmitted Motion for Summary Judgment on All Remaining Claims; and Hayden H. Thompson's Motion for Summary Judgment. On July 2, 1996, an Order of Reference was entered, referring these consolidated cases to a magistrate for resolution of all nondispositive motions and for recommendations regarding the appropriate resolution of all dispositive motions. The motions have been extensively briefed, and oral argument would not materially assist the Court in its analysis of the issues presented. For the reasons discussed below, it is recommended that Schneider's Motion to Dismiss be denied; that Schneider's Motion for Summary Judgment be granted in part and denied in part; and that Thompson's Motion for Summary Judgment be denied.

### I. Statement of Facts

The consolidated cases arise out of the demise of Stat–Tech Corporation (Stat–Tech). All assert primary and secondary liability claims premised on securities fraud under the Securities Exchange Act of 1934 and the Colorado Securities Act. In addition, each case alleges a variety of state common law claims. The defendants include Ray Fenster (the president of Stat–Tech); Therese Lamb (Fenster's wife and a director

of Stat–Tech); Hayden Thompson (an outside Stat–Tech director); Rodger Thornton (a securities broker and registered representative of Schneider Securities); and Schneider Securities.

Stat-Tech was formed as part of a blind pool merger in November of 1988 by Defendant Fenster. The company's principal business was the manufacture of electrostatic dissipation devices. It is alleged that between 1988 and 1991, Fenster, Lamb, and Thompson engaged in several fraudulent schemes with respect to Stat–Tech securities, such as (a) issuing false and misleading financial disclosure statements; (b) issuing false and misleading press releases; (c) issuing warrants to each other for little or no consideration, and illegally sharing restricted stock; and (d) causing Stat–Tech to issue stock as compensation for their services.

In September of 1991, Plaintiff Proactive Partners, L.P. ("Proactive") purchased Stat–Tech stock in a private placement transaction for $1,500,000. The offering document upon which the transaction was based allegedly contained false and misleading information. Defendant Thornton assisted in bringing Proactive and Stat–Tech together for the deal and received a finder's fee from Fenster. In October of 1991, Proactive purchased additional Stat–Tech stock owned by Defendant Thompson. The transaction was negotiated through Fenster and Thornton.

Thornton also located and solicited VBW Partnerships, Ltd. and TRW Family Partnerships, Ltd. (collectively "VBW") to purchase shares of Stat–Tech owned by Thompson. VBW alleges that it based its decision to purchase on false and misleading information and documents.

In December of 1991, Stat–Tech's accountant revealed irregularities indicating that the company's previous financial statements had not been audited and that revenues had been grossly overstated. Fenster was removed from the board of directors and Proactive was given a seat on the board. Stat–Tech formed an investigative committee, which uncovered further evidence of fraudulent activity.

By June of 1992, Stat–Tech's financial condition had degenerated to the point that it filed for bankruptcy protection. It emerged from a Chapter 11 reorganization as the Stat–Tech Liquidating Trust (the "Trust"). The Trust was authorized by the bankruptcy court to pursue its claims against the defendants.

## II. General Legal Standards Applicable to the Instant Motions

### A. Schneider's Motion to Dismiss

Defendant Schneider has filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In considering a Rule 12(b)(6) motion, the complaint must be liberally construed, *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 790 n. 18, 113 S.Ct. 2891, 2906 n. 18, 125 L.Ed.2d 612 (1993), and its factual allegations must be deemed true. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989). All reasonable inferences must be drawn in favor of the nonmoving party. *Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989). Dismissal of a claim is improper unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of the claim that would entitled him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### B. Schneider and Thompson's Motions for Summary Judgment

A motion for summary judgment may be granted only where there are no material issues of fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The test for determining the presence or absence of a material issue of fact is the same as the test for a directed verdict; namely, whether the evidence is sufficient to sustain a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Concrete Works, Inc. v. City and County of Denver,* 36 F.3d 1513, 1517 (10th Cir.1994), *cert. denied,* 514 U.S. 1004, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, and assess its sufficiency consistent

with the evidentiary burden imposed by the controlling substantive law. *Anderson,* 477 U.S. 242, 106 S.Ct. 2505; *Exnicious v. United States,* 563 F.2d 418, 423 (10th Cir.1977). The Court may consider only admissible evidence when ruling on a summary judgment motion. *World of Sleep v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985). Doubts should be resolved in favor of the presence of triable fact issues. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991).

If the moving party will not bear the burden of proof at trial, that party's motion for summary judgment need only demonstrate the absence of an essential element of the opponent's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Thereafter, the non-moving party must come forward with evidence in the form of affidavits, depositions, answers to interrogatories, and admissions to establish that a genuine issue of material fact exists. *Id.* If, on the other hand, the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense. *Resolution Trust Corp. v. Northpark Joint Venture,* 958 F.2d 1313, 1322 (5th Cir.1992), *cert. denied sub nom., Dannis v. Resolution Trust Corp.,* 506 U.S. 1048, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993); *Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3d Cir.1992).

### III. Analysis

A. *Motion of Schneider Securities to Dismiss for Failure to File Certificate of Review*

■ Judge Kane's Memorandum Opinion and Order of November 6, 1995, dismissed VBW's Sixth Claim for Relief, which, in essence, asserted an independent primary federal securities claim against Schneider Securities for negligent supervision of Defendant Thornton. Judge Kane concluded that under Tenth Circuit precedent, allegations of mere negligence were insufficient to support an implied right of action for violation of NASD Rules of Fair Practice:

The Tenth Circuit has stated that 'in an appropriate case,' the securities exchange rules may give rise to a private cause of action. *Utah State Univ. of Agric. & Applied Science v. Bear, Stearns & Co.,* 549 F.2d 164, 168 (10th Cir.1977). In order to avoid the potential for 'massive liability' of exchange members and to encourage self-regulation, however, the Tenth Circuit defines an 'appropriate case' to be one that alleges more than mistake or negligence. *Id.* (allegations in 'appropriate case' must be 'tantamount to fraud'), *applied in Noland v. Gurley,* 566 F.Supp. 210, 214–15 (D.Colo.1983) (Kane, J.). Here, plaintiffs' sixth claim for relief is premised solely on Schneider's alleged negligent 'failure to adequately supervise Thornton and ... failure to establish and maintain a reasonable system of supervision.' Under the law of this circuit, these allegations fail to state a claim upon which relief can be granted.

(Memorandum Opinion and Order at 29–30.)

In the same Opinion, Judge Kane declined to dismiss VBW's Seventh Claim for Relief against Schneider, premised on vicarious liability. Judge Kane categorized the Seventh Claim as one alleging imputed liability on the part of an employer for the fraudulent conduct of an employee where the former "knows of and encourages the fraudulent behavior of his [employee.]" (Memorandum Opinion and Order at 32.)

Apparently sometime after Judge Kane issued his Memorandum Opinion and Order, VBW provided Schneider with an expert report in which the expert purports to render an opinion that Schneider negligently supervised Defendant Thornton. Schneider has now filed another Motion to Dismiss, asserting that VBW is attempting to recast its Seventh Claim for Relief into one for negligent supervision. Schneider argues that Judge Kane has already held that no liability exists under the federal securities laws for negligent supervision, and that, in any event, VBW never provided a Certificate of Review, as required by C.R.S. § 13–20–602.

Initially, the Court observes that to the extent VBW suggests that it still has a viable claim of primary liability premised on negligent supervision, it is in error. The primary liability negligent supervision claim or claims were addressed by Judge Kane, and he clear-

ly and unambiguously held that such claims were not cognizable under the federal securities laws. We need not consider the matter further.

■ On the other hand, the Seventh Claim for Relief remains intact after Judge Kane's Memorandum Opinion and Order. Contrary to VBW's suggestion and Schneider's concerns, this is not an independent primary claim based on negligent supervision. It is a vicarious liability claim premised on imputed liability under the law of agency and *respondeat superior*. Under the *respondeat superior* doctrine, an employer is strictly liable for the torts committed by an employee acting within the scope and course of employment. Under this doctrine, Schneider will be held vicariously liable for any alleged fraudulent conduct of Thornton if VBW is able to prove that (a) Thornton was employed by Schneider at the time of the alleged fraud; and (b) Thornton's activities were within the scope and course of his job duties. The *respondeat superior* doctrine raises no issues regarding the reasonableness or unreasonableness of Schneider's conduct. Since negligence is not a material consideration in determining whether an employer is vicariously liable for the torts of an employee, C.R.S § 13–20–602 has no applicability in such a setting.

■ *Respondeat superior* is not the only vicarious liability doctrine which may have some pertinence to the instant case. Even if VBW cannot establish the existence of a master-servant relationship between Schneider and Thornton, the law of agency may provide an alternative basis for imputed liability.[1] A principal is liable for the tortious misrepresentation of an agent if the agent's representations were "(a) authorized; (b) apparently authorized; or (c) within the power of the agent to make for the principal." Restatement (Second) of Agency § 257. In addition, a principal may become liable for the tortious acts of an agent under the doctrines of estoppel and restitution.

E.g., Restatement (Second) of Agency § 141. These legal concepts allow for liability to be imputed to a principal where, for example, (a) the principal knows of and encourages the agent's tortious conduct; (b) with knowledge of the tortious conduct, the principal accepts the fruits thereof; or (c) the principal places the agent in a position to commit the wrongdoing and then fails to exercise an adequate amount of supervision. *See King v. Horizon Corp.*, 701 F.2d 1313, 1318 (10th Cir.1983); *In re Stat–Tech Securities Litigation*, 905 F.Supp. 1416, 1431 (D.Colo.1995).

■ Schneider points out that the Certificate of Review mandated by C.R.S. § 13–20–602 must be provided as to all claims which require proof of professional negligence as a predicate to recovery, whatever the formal designation of the claim might be. *Martinez v. Badis*, 842 P.2d 245, 250–51 (Colo.1992). However, the vicarious liability claim pleaded in the Seventh Claim for Relief does not require proof of professional negligence; indeed, it does not call for proof of negligence at all. The fact that some consideration of the reasonableness of the principal's actions may be necessary in order to define the contours of an agent's apparent authority, *see DeBoer Constr., Inc. v. Reliance Ins. Co.*, 540 F.2d 486, 492 (10th Cir.1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977), and/or whether the estoppel doctrine should come into play does not make the imputed liability claim an "action for damages or indemnity based upon ... alleged professional negligence," within the meaning of C.R.S. § 13–20–602. Accordingly, the Motion of Schneider Securities, Inc. to Dismiss for Failure to File Certificate of Review should be denied.

**B.** *Resubmitted Motion of Schneider Securities, Inc. for Summary Judgment on All Remaining Claims* [2]

*1. Control person liability*

VBW asserts secondary liability claims against Schneider founded upon allegations

---

**1.** The relation of master and servant may be viewed as a type of agency. All of the general agency principles are pertinent to it. On the other hand, an agency relationship may exist even though a master-servant relationship does not. In such a situation, the principles of agency

law may support imputed liability even though the *respondeat superior* doctrine is not applicable.

**2.** Plaintiffs' Response to this motion, filed August 9, 1996, contends that the Court should exercise its power under Rule 56(f) and delay any decision on the motion until after the discovery cut-

that Schneider was a "controlling person" vis-a-vis Thornton, within the meaning of § 20(a) of the Securities Exchange Act of 1934 and its Colorado counterpart, C.R.S. § 11–51–604(5)(b). Judge Kane's Memorandum Opinion and Order of November 6, 1995 concluded that the plaintiffs' allegations of control person liability were sufficient to withstand Schneider's Rule 12(b)(6) motion to dismiss. Schneider has now moved for summary judgment, contending that VBW cannot make a sufficient evidentiary showing to create a triable issue of fact concerning control person liability. The Court disagrees.

Section 20(a) of the 1934 Act provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). The language of C.R.S. § 11–51–604(5)(b) is substantially similar to that employed in § 20(a) of the 1934 Act, and federal precedent is persuasive in construing parallel provisions of the Colorado Securities Act. *Lowery v. Ford Hill Inv. Co.*, 192 Colo. 125, 556 P.2d 1201, 1204 (1976).

 In order to establish a *prima facie* case of control person liability, the plaintiff must present evidence from which a reasonable fact finder could conclude that (a) a primary violation of the securities laws occurred; and (b) the defendant controlled the person or entity committing the primary violation. *First Interstate Bank of Denver v. Pring*, 969 F.2d 891, 896 (10th Cir.1992), *rev'd on other grounds sub nom., Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Once the plaintiff has established a *prima facie* case of control person liability, the defendant has the burden of showing that it acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of

action. *See id. See also Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 & n. 25 (9th Cir.1990) (en banc), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991); *Metge v. Baehler*, 762 F.2d 621, 631 (8th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).

 The sole issue raised by Schneider's Resubmitted Motion for Summary Judgment relates to the element of control. In order to show control, a plaintiff is not required to demonstrate that the defendant was involved in the particular transaction which constituted the alleged primary securities law violation. *Pring*, 969 F.2d at 897. It is sufficient that the defendant have some direct or indirect means of discipline or influence short of actual direction. *Richardson v. MacArthur*, 451 F.2d 35, 41–42 (10th Cir.1971). The Securities and Exchange Commission regulations define "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405.

 The seminal case addressing the applicability of the § 20(a) of the 1934 Act to the relationship between a broker-dealer and its registered representatives is *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). In *Hollinger*, the United States Court of Appeals for Ninth Circuit held that "a broker-dealer is a controlling person under § 20(a) with respect to its registered representatives." *Id.* at 1574. This is true regardless of whether the registered representative is considered an employee or an independent contractor. As the *Hollinger* Court stated: "[W]e see no basis in the statutory scheme to distinguish between those associated persons who are employees and agents on the one hand, and those who are independent contractors on the other." *Id.* The *Hollinger* Court relied on three key factors as support for its conclusion: (a) Section 15(a) of the 1934 Act makes it unlawful for any person not associated with a registered broker or dealer to make use of an instrumentality of interstate

off date. Since the discovery cut-off has now passed, this aspect of the Response is moot.

commerce to effect any transactions in securities; (b) a broker-dealer is required by statute to establish and enforce a reasonable system of supervision and control over its representatives' activities; and (c) a registered representative utilizes his or her broker-dealer to gain access to the securities markets.

Recently, the Ninth Circuit has revisited and carved out a narrow exception to the *Hollinger* doctrine. In *Hauser v. Farrell*, 14 F.3d 1338 (9th Cir.1994), the Court considered a fact scenario in which registered representatives of a broker-dealer allegedly committed a primary violation of the federal securities laws in connection with the sale of a partnership investment. The evidence was undisputed that (a) the registered representatives did not make use of the broker-dealer's access to the securities markets to promote or effectuate the sales of the partnership interests; (b) the broker-dealer had no knowledge of the complained-of transactions; (c) the partnership interests being sold by the registered representatives were unrelated to any securities sold or offered by the broker-dealer; (d) the plaintiffs did not rely on the registered representatives' relationship with the broker-dealer in making their decision to invest in the partnership. *Id.* at 1339–40. Under these circumstances, the Court held that summary judgment in favor of the broker-dealer on a claim of control person liability was appropriate because the uncontroverted evidence established that the registered representatives were acting solely in their individual capacities in promoting the sale of the partnership interests. *Id.* at 1342.

While the matter is not entirely free from doubt, the Court finds and concludes that, when viewed in the light most favorable to VBW, the evidentiary record in the instant case requires application of the *Hollinger* doctrine, rather than the *Hauser* exception thereto. It is true that Thornton did not make use of Schneider's access to the securities markets in order to accomplish the private placement transaction here at issue. On the other hand, there is substantial evidence in the record supporting VBW's position that Schneider was a control person. For example, the evidentiary record reveals that the principals in VBW did business with Thornton in reliance upon his position as a registered representative of Schneider. (*See* Exhibit P to Plaintiffs' Response Brief: Memorandum of October 15, 1991.) This factor clearly distinguishes the instant case from *Hauser*. Furthermore, the record indicates that although Schneider was not involved in the particular sale of the Stat–Tech securities here in question, it was a market-maker for Stat–Tech stock. When viewed in the light most favorable to VBW, the evidence indicates that its principals relied on Schneider's status as a market-maker in deciding to do business with Thornton. (*See* Exhibit P, supra.)

The contract between Schneider Securities and Thornton establishes that the former had the right to exercise extensive control over the activities of the latter. For example, the contract provides that Schneider may take disciplinary action against Thornton, including fines, suspensions, or termination of the contract if Thornton violates any of the contract terms and conditions. Among the terms and conditions is Thornton's agreement to comply with all state and federal securities laws and to inform Schneider of *all* orders placed by him on behalf of his clients. (*See* Exhibit G to Plaintiffs' Response Brief. Agreement of June 15, 1988.) Finally, the Schneider Supervisory Procedures Manual further indicates the company's intent to exercise control over its registered representatives, including control over transactions in which its registered representatives purport to act independently. (Exhibit N to Plaintiffs Response Brief: Supervisory Procedures Manual.)

In summary, viewing the evidence in the light most favorable to VBW, it is clear that Schneider had the right by contract or otherwise to exercise substantial direct and indirect influence, supervision, and control over Thornton's activities. This right of control was not limited to transactions in which Thornton made use of Schneider's access to the securities markets, but also extended to transactions, such as the one at issue here, where Thornton allegedly acted independently of Schneider. VBW was aware of Thornton's relationship with Schneider and, in fact, its decision to do business with Thornton was

based, at least in part, on Thornton's status as a Schneider registered representative and on Schneider's status as a market-maker for Stat–Tech stock. Accordingly, Schneider is not entitled to a judgment in its favor as a matter of law on VBW's claims premised on control person liability.

### 2. Aiding and abetting

■ VBW asserts a secondary liability claim against Schneider for aiding and abetting a violation of the Colorado Securities Act pursuant to C.R.S. § 11–51–604(5)(c), as well as a secondary liability claim for aiding and abetting a common law fraud.[3] After reviewing the evidentiary record, the Court finds and concludes that VBW has failed to come forward with any competent evidence from which the fact finder could infer that Schneider knew of Thornton's alleged violations of the Colorado Securities Act. While there may well be evidence sufficient to create an issue of fact as to whether Schneider acted recklessly or negligently, the Court concludes that reckless or negligent conduct does not provide a legal basis for a claim of aiding and abetting under C.R.S. § 11–51–604(5)(c) or common law.

Prior to 1990, the Colorado Securities Act imposed liability on those who "recklessly, knowingly, or with an intend to defraud" gave substantial assistance to a person who was liable for a primary violation of the Act. C.R.S. § 11–51–125(5)(b)(1987 Suppl.). In 1990, the Colorado Securities Act was repealed and reenacted. The language of the former aiding and abetting statute was changed to read as follows:

> Any person who knows that another person liable under subsection (3) or (4) of this section is engaged in conduct which constitutes a violation of section 11–51–501 and who gives substantial assistance to such conduct is jointly and severally liable to the same extent as such other person.

C.R.S. § 11–51–604(5)(c).

■ Conspicuously absent from the present statute is the reference to reckless conduct which was contained in the prior enactment. We cannot simply ignore this change in language. "Where the words of a later statute differ from those of a previous one on the same or related subject, the [legislature] must have intended them to have a different meaning." ( *Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846, 849 n. 5 (10th Cir.1990) (quoting from *Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439, 1444 (D.C.Cir.1988)), *cert. denied*, 488 U.S. 1010, 109 S.Ct. 795, 102 L.Ed.2d 786 (1989)). Therefore, the Court concludes that the 1990 reenactment of the aiding and abetting provision in the Colorado Securities Act is intended to limit aiding and abetting claims to those instances where the plaintiff can demonstrate that the defendant had knowledge of the primary violation. Recklessness is no longer a sufficient basis for imposing liability.

■ The Colorado Supreme Court has not addressed the viability of a claim for aiding and abetting common law fraud. The Colorado Court of Appeals has indicated that liability for aiding or abetting a tortious act may be imposed "if the party whom the defendant aids performs a wrongful act that causes an injury, the defendant is generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance, and the defendant knowingly and substantially assists the principal violation." *Holmes v. Young*, 885 P.2d 305, 308 (Colo.Ct.App.1994).

The Court assumes for purposes of discussion that the Colorado Supreme Court would accept the rationale of *Holmes*. Under *Holmes*, liability for aiding and abetting a common law tort may only be imposed on those who knew that the tort was being committed and who understood in a general sense what their role was in conjunction with the tortious activity. In short, the defendant must be aware that his conduct is assisting another in the commission of a tortious act.

■ As indicated above, there is no evidence in the record from which an inference can be drawn that Schneider knew that Thornton was engaging in fraudulent activities. The fact that Schneider may have act-

---

3. The United States Supreme Court has held that Congress did not intend to create a claim for aiding and abetting a violation of § 10(b) of the 1934 Act. *Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 177–78, 114 S.Ct. 1439, 1448–49, 128 L.Ed.2d 119 (1994).

ed negligently or recklessly is not sufficient to meet the mental state element of a claim for aiding and abetting a common law tort.

### 3. Vicarious liability

Schneider contends that VBW has failed to muster evidence which would support a vicarious liability claim. The Court has previously addressed VBW's vicarious liability claims in the context of Schneider's Motion to Dismiss for Failure to File Certificate of Review, and portions of that discussion are also pertinent to Schneider's Resubmitted Motion for Summary Judgment.

■ After reviewing the record, the Court finds no evidence supporting an inference that Thornton was an employee of Schneider. The written Agreement between Thornton and Schneider provides that the former is an independent contractor. Furthermore, the record is devoid of evidence that Schneider exercised the type of day-to-day control over Thornton's activities which would warrant a finding that the relationship between Thornton and Schneider was one of employer and employee. As a result, the doctrine of *respondeat superior* has no application. *See, e.g., Boulder Valley School Dist. R–2 v. Price,* 805 P.2d 1085, 1093 n. 14 (Colo.1991) (under *respondeat superior,* employer is liable for torts of employee committed in furtherance of their employment); *Packaging Corp. of America v. Roberts,* 169 Colo. 316, 455 P.2d 652, 654 (1969) (same).

■ The fact that no employer-employee relationship has been demonstrated does not completely resolve the matter of vicarious liability. As indicated in Section III(a) above, vicarious liability may be imposed under agency principles. While acknowledging this, Schneider asserts that the record is devoid of evidence showing that Thornton had actual or apparent authority to act for Schneider in his dealings with the plaintiffs. As the Court pointed out in Section III(a), a principal may be vicariously liable for the tortious acts of an agent where the principal places the agent in a position to commit the wrongdoing. *See* Restatement (Second) of Agency § 261. See also *Richards v. Attorneys' Title Guaranty Fund, Inc.,* 866 F.2d 1570, 1572 (10th Cir.1989), (when one of two innocent persons must suffer from the acts of a third, he must suffer who put it in the power of the wrongdoer to inflict the injury), *cert. denied,* 491 U.S. 906, 109 S.Ct. 3189, 105 L.Ed.2d 697 (1989); *Gilmore v. Constitution Life Ins. Co.,* 502 F.2d 1344, 1349 (10th Cir. 1974) (principal is responsible for the fraudulent acts of an agent whom he has put in position to perpetrate the complained of fraud); *Thomas v. Colorado Trust Deed Funds, Inc.,* 366 F.2d 140, 143 (10th Cir. 1966) (same); *First Interregional Equity Corp. v. Haughton,* 805 F.Supp. 196, 201–02 (S.D.N.Y.1992) (applying doctrine to securities fraud case). The doctrine is particularly applicable where there is evidence from which the fact finder could infer that the principal did not exercise satisfactory supervision over the agent's activities. *King,* 701 F.2d at 1318; *Gilmore,* 502 F.2d at 1348–49.

When viewed in the light most favorable to VBW, the evidence indicates that Schneider made Thornton its registered representative. Furthermore, Schneider was a market-maker for Stat–Tech stock. Thus, Schneider arguably placed Thornton in a position which would give investors reason to believe that Thornton and his principal had expertise and knowledge concerning Stat–Tech. In addition, there is evidence in the record that Schneider allowed Thornton to set up a one-man office where he worked independently and alone. Schneider's compliance officer never visited Thornton's office. Compliance supervision was handled informally and on an *ad hoc* basis. In short, the evidentiary record before the Court is sufficient to create a triable issue of fact as to whether Schneider may be held vicariously liable under the legal principles set forth in Restatement (Second) of Agency § 261 and *King.*

### C. Thompson's Motion for Summary Judgment on the Claims of Stat–Tech. Proactive, and VBW

#### 1. The § 10b and 10b–5 claims

Stat-Tech, Proactive, and VBW have each asserted a variety of claims against Defendant Thompson, an outside director of Stat–Tech in 1989–90, and an owner of a sizeable block of Stat–Tech stock. The complaints include allegations that Thompson committed

primary and secondary violations of the Securities Exchange Act and the Colorado Securities Act, as well as state law claims for fraud, negligent misrepresentation, and breach of fiduciary duty. In addition, VBW has asserted that Thompson is vicariously liable as a principal for the tortious acts of his agents and subagents.

Thompson acknowledges that there were serious misrepresentations regarding, among other things, Stat–Tech's overseas sales. He further acknowledges that he signed the 1989 Stat–Tech Form 10–K, which contained false information concerning sales revenues. Nevertheless, Thompson contends that the misrepresentations were part of a scheme to defraud devised and implemented by Stat–Tech's president, Defendant Fenster, and that Thompson, like the plaintiffs, was simply a victim of Fenster's fraudulent activities. Consistent with this factual theme, Thompson's motion asserts that the plaintiffs have failed to adduce sufficient evidence to create a triable issue of fact that he acted with the scienter required by the federal and state securities laws.

 Liability under § 10 of the 1934 Act and Rule 10b–5 requires a finding of scienter, which is defined as "a mental state embracing intent to deceive manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). The requisite scienter may be established by proof of recklessness; namely, "conduct which falls far short of the standard of ordinary care and which carries a danger of misleading purchasers such that [defendant] knew or must have known of its propensity to mislead." *Carlson, Inc. v. Securities Exchange Comm.,* 859 F.2d 1429, 1435 (10th Cir.1988); *Hackbart v. Holmes,* 675 F.2d 1114, 1118 (10th Cir.1982). Negligent conduct does not afford a basis for liability. *Ernst & Ernst,* 425 U.S. at 193 n. 12, 96 S.Ct. at 1381 n. 12.

Resolution of Thompson's motion necessitates a review of the evidentiary record to determine whether it contains sufficient evidence from which the jury could find scien-

ter. In performing this task, the Court must bear in mind that the evidence must be viewed in the light most favorable to the plaintiffs, and doubts should be resolved in favor of the presence of a triable fact issue. *Boren,* 933 F.2d at 892. Even more caution should be exercised where, as here, a motion for summary judgment raises issues regarding the defendant's state of mind. *E.g., Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb Inc.,* 967 F.2d 742, 751 (2d Cir.1992); *Wechsler v. Steinberg,* 733 F.2d 1054, 1058–59 (2d Cir.1984).[4]

 There is no direct evidence that Thompson knew of and participated in Fenster's fraudulent activities. However, direct evidence of fraudulent intent is rarely available. *Goshen Litho, Inc. v. Kohls,* 582 F.Supp. 1561, 1564 (S.D.N.Y.1983). While the circumstantial evidence in the instant case is not strong, the Court finds and concludes that it is sufficient to create a triable issue of fact regarding scienter. Specifically, the evidence establishes that Thompson was a sophisticated businessman and investor. He had organized and operated various corporations and partnerships, and had been involved in several complex business transactions, including the one which resulted in the formation of Stat–Tech. In 1988, Thompson purchased approximately 27,500,000 shares of Gleneagle Capital Corporation stock for approximately $100,000 in anticipation of a merger of Gleneagle with Static–Buster, Inc., a wholly owned subsidiary of Gleneagle. The resulting entity was Stat–Tech. Thompson became a member of the Stat–Tech board of directors and exchanged his Gleneagle stock for approximately a like amount of Stat–Tech stock, giving him an ownership interest in excess of 20%. Ultimately, Thompson sold his interest in Stat–Tech in 1991 for $1,000,-000, which represents approximately a $900,-000 profit.

It is undisputed that Thompson signed as a director the 1989 10–K, and that the filing contained serious misrepresentations regarding the financial condition of the company, as

---

4. It should also be noted that Judge Kane's Memorandum Opinion and Order of November 6, 1995, found that the complaint in the Stat–Tech case alleged sufficient facts from which the jury could infer scienter on the part of Thompson. Judge Kane declined to consider Thompson's alternative motion for summary judgment because no discovery had been conducted at that time.

well as a fictitious auditor's report. It is noteworthy that the document purports to have been signed by Thompson on January 3, 1990, approximately 3 months after the close of the company's 1989 fiscal year. In fact, the 1989 10–K was not signed by Thompson until late 1990 or early 1991, after he had resigned as a Stat–Tech director. The 1989 10–K was provided to and relied upon by Proactive and VBW in their stock purchases.

Thompson knew that the company had continuing problems with its accounting firms. He was aware that Fenster questioned their competence, and that between 1988 and 1991, Stat–Tech changed its auditors several times. Thompson himself expressed concerns regarding the company's chief financial officer, and recommended that he be replaced "with a qualified C.F.O." (Exhibit H to VBW's Response Brief.) Despite this knowledge, and although he was a member of the board of directors and a significant shareholder, Thompson never reviewed the audited financial statements and never met or conferred with the company's auditors.

Thompson points out that even if his failure to take a more active role as a director might be deemed negligent, it does not support a claim for securities fraud. The Court has no quarrel with this legal proposition. If the fact-finder agrees with Thompson's version of the facts—that Thompson had no reason to believe that anything was amiss at Stat–Tech—plaintiffs' case against him cannot be saved by pointing to actions which he could have taken to discover the fraud. On the other hand, when viewed in the light most favorable to the plaintiffs, the evidence supports an inference that Thompson was on notice concerning problems in the company's S.E.C. compliance, its accounting department, and its auditors, and that he did not undertake any investigation or analysis of these matters because his sole interest was in disposing of his stock at a substantial profit. This inference is strengthened by Thompson's conduct vis-a-vis the 1989 Form 10–K. If the jury ultimately accepts the alternative scenario portrayed by the plaintiffs, it would be warranted in finding that Thompson acted with the type of scienter necessary to support a violation of the federal securities laws.

### 2. The § 20 claim

As stated previously in this Recommendation, a plaintiff establishes a prima facie case of control person liability under § 20 of the 1934 Act by presenting evidence of a primary violation and defendant's status as a controlling person. Once the plaintiff meets this burden, the defendant must show that he acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. *Pring,* 969 F.2d at 897. Thompson takes issue with the § 20 claims asserted by the plaintiffs. It is unclear from his motion and briefs, however, whether he is contending that the plaintiffs have not produced sufficient evidence of control, or whether his argument rests on the premise that he has established the good faith defense as a matter of law. Regardless of the basis for Thompson's position, the evidentiary record requires that it should be rejected.

■ Generally, one's status as an outside director, in itself, does not give rise to an inference of control. *In re Leslie Fay Companies, Inc. Securities Litigation,* 918 F.Supp. 749, 762 (S.D.N.Y.1996); *Professional Service Industries, Inc. v. Kimbrell,* 834 F.Supp. 1289, 1296–97 (D.Kan.1993). Likewise, one's status as a minority shareholder, even when combined with a seat on the board, does not establish the requisite control to impose liability under § 20 of the 1934 Act. *In re Gupta Corp. Securities Litigation,* 900 F.Supp. 1217, 1243 (N.D.Cal.1994). On the other hand, evidence that an outside director and significant minority shareholder knowingly or recklessly participated in issuing the misleading statements at issue is sufficient to meet the plaintiff's burden under § 20. *In re Leslie Fay Companies, Inc. Securities Litigation,* 918 F.Supp. at 762–63. Thus, although a plaintiff is not compelled to present evidence of participation in the alleged primary violation as part of his or her initial burden, the plaintiff may choose to do so because such evidence is probative on the issue of control.

■ In Section III(C)(1) of this Recommendation, the Court found and concluded that the plaintiffs had presented sufficient evidence to create a triable issue of fact as to

whether Thompson knowingly or recklessly participated in issuing the misleading statements contained in the 1989 Form 10–K. This evidence, when combined with Thompson's position as an outside director from 1989 to 1990 and his sizeable minority stock interest is sufficient to meet the plaintiff's burden under § 20. It is also sufficient to defeat Thompson's claim that he is entitled to summary judgment as a matter of law on § 20's good faith defense.

### 3. State securities law claims

Each of the plaintiffs has asserted claims under the Colorado Securities Act premised on control person liability and substantial assistance (i.e., aiding and abetting). In addition, Proactive and VBW have asserted primary Colorado Securities Act liability claims against Thompson. Thompson's motion attacks each of the Colorado Securities Act claims on the same ground raised in connection with the plaintiffs' federal claims; namely, that the record contains insufficient evidence of scienter. The Court's discussion of the scienter issue in Section III(C)(1) of this Recommendation disposes of Thompson's motion directed at the state statutory claims as well. There is adequate evidence in the record to allow the jury to infer that Thompson knew of or acted in reckless disregard of Fenster's fraudulent conduct.[5]

### 4. State common law claims

■ The plaintiffs have asserted state common law claims against Thompson for fraud, breach of fiduciary duty, and negligent misrepresentation. Thompson asserts that he is entitled to judgment on the fraud and breach of fiduciary duty claims because he acted in good faith and without knowledge of Fenster's scheme to defraud. The Court has previously rejected this argument with respect to the federal and state securities claims, and rejects it with respect to the fraud and breach of fiduciary duty claims as well. While weak, there is evidentiary support for plaintiffs' allegations that Thompson knew of or recklessly disregarded the fraudulent scheme. Accordingly, the motion for summary judgment directed to the common

law fraud and breach of fiduciary duty claims should be denied.

Thompson offers four arguments as to why he is entitled to judgment as a matter of law on the plaintiffs' negligent misrepresentation claims. Two of these can be disposed of without extensive analysis. To the extent Thompson asserts that there is insufficient evidence of negligence to present a jury question, his position must be rejected for the reasons discussed in Section III(C)(1) of this Recommendation. Furthermore, Thompson's contention that he did not disseminate any information is belied by his signature on the 1989 Form 10–K.

■ Thompson's third argument requires more discussion. He argues that the tort of negligent misrepresentation is not applicable to representations made in connection with transactions to which the defendant is a party. Rather, contends Thompson, the representations must be supplied for use by the plaintiff in a transaction with a third party. The Court agrees with Thompson's legal position.

Colorado has adopted the Restatement (Second) of Torts § 552 for claims of negligent misrepresentation. *Keller v. A.O. Smith Harvestore Prod., Inc.,* 819 P.2d 69, 72 (Colo.1991). The Restatement provides a remedy against a defendant who, in the course of his business, profession, or employment, negligently supplies false information "for the guidance of others in their business transactions." While there are no Colorado Supreme Court decisions directly on point, no less than three cases from the United States District Court for the District of Colorado have concluded that Restatement's reference to "business transactions" only encompasses transactions between the plaintiff and third parties. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.,* 946 F.Supp. 861, 870–71 (D.Colo.1996); *Colorado Nat'l Bank of Denver v. Adventura Assocs., L.P.,* 757 F.Supp. 1167, 1172 (D.Colo.1991); *Snoey v. Advanced Forming Technology, Inc.,* 844 F.Supp. 1394, 1400 (D.Colo.1994).

---

**5.** If the jury finds that Thompson's conduct was reckless, rather than knowing, the claims for aiding and abetting under C.R.S. § 11–51–

604(5)(c) would fail. *See Section III(B)(2) of this Recommendation.*

■ Although the Court agrees with Thompson's legal position, there are still triable issues of fact on the "third party transaction" element which preclude summary judgment. For example, at least a portion of Proactive's purchases involved stock that was not owned by Thompson. Likewise, the Trust's claims involve damages sustained as a result of purchases of Stat–Tech stock by investors in transactions to which Thompson was not a party. Finally, even as to those shares which VBW and Proactive assert were acquired from Thompson, Thompson argues that he was not the seller because he had surrendered the stock to Stat–Tech. Consequently, if the fact-finder accepts Thompson's view of the facts in this regard, the "third party transaction" element of the negligent misrepresentation claims will be met.

Finally, Thompson argues that a claim for negligent misrepresentation is unavailable as a matter of law when it is based on the fact that an outside director signed a 10–K containing misrepresentations allegedly relied upon by investors in purchasing stock. He argues that allowing a claim for negligent misrepresentation in such circumstances would place the outside director under a higher standard of care than that imposed by §§ 10(b) and 20(a) of the Securities Exchange Act. He further points out that if such a standard were adopted, "no director of a public corporation could sign an SEC filing without undertaking liability for negligence to an unlimited universe of investors over an unlimited period of time." (Thompson's Reply Brief, at 8 n. 8.)

■ Thompson cites no case law in Colorado or elsewhere supporting the proposition that the common law tort of negligent misrepresentation is inapplicable to fact situations such as the one presented here.[6] The fact that the tort of negligent misrepresentation may have a lower scienter requirement than the 1934 Act is not determinative of the matter, for Colorado clearly may impose a higher standard of care on corporate officers and directors in connection with securities transactions than that imposed by Congress. Absent Colorado case law to the contrary,

the Court concludes that the Colorado courts would recognize a claim for negligent misrepresentation in the context of an outside director who signs a federally mandated disclosure form containing materially false representations concerning the company.

### 5. The vicarious liability claim

VBW has asserted a claim against Thompson premised on vicarious liability. In this regard, VBW argues that (a) Fenster acted as Thompson's agent to sell the latter's stock in Stat–Tech; (b) Fenster appointed Thornton and Edwin Pittock as subagents to assist in the sale of Thompson's stock; (c) Thornton and Pittock violated federal and state securities laws, and committed common law torts in the process of selling Thompson's stock to VBW; and (d) because Thornton and Pittock were his subagents, Thompson is liable for their tortious conduct. For purposes of his summary judgment motion, Thompson does not dispute that Fenster acted as his agent. However, he asserts that, as a matter of law, Thornton and Pittock cannot be deemed his agents because he had no communication with them and did not authorize Fenster to retain them. Furthermore, Thompson contends that even if Thornton and Pittock are considered to be his agents, he cannot be held liable for their conduct because they acted against his interests.

■ "The existence of an agency relationship is ordinarily a question of fact, but the court may properly decide the question as one of law when the facts are not in dispute." *Stortroen v. Beneficial Finance Co. of Colo.,* 736 P.2d 391, 395 (Colo.1987) (citations omitted). In considering whether Thornton or Pittock may be subagents of Thompson, the fact that Thompson had no communications or contact with either of them is not determinative. As the Restatement (Second) of Agency § 80 aptly points out:

"Unless otherwise agreed, authority to appoint a subagent is inferred from authority to conduct a transaction for the principal for the performance of which the agent is

---

**6.** One federal decision from this District upheld a claim of negligent misrepresentation against a motion to dismiss in the context of securities fraud allegations. *Susquehanna Inv. Group v.* *Amgen Boulder, Inc.,* 918 F.Supp. 326, 327 (D.Colo.1996). However, the issue raised by Thompson was not addressed by the Court.

to be responsible to the principal if: ... (d) the appointment of subagents for the performance of such transactions is usual, or the principal has reason to know that the agent employs subagents...."

*See also Norton v. Jim Phillips Horse Transportation, Inc.,* 901 F.2d 821, 825 (10th Cir.1989) (citing the Restatement (Second) of Agency § 80); *Rohauer v. Little,* 736 P.2d 403, 407 (Colo.1987) (same).

■ It is undisputed that when Thompson resigned from the Stat–Tech board, he submitted a resignation letter to Fenster encouraging him to locate a financial backer to purchase Thompson's stock. Certainly, Thompson could have anticipated that, in carrying out his request, Fenster would appoint persons involved in the securities industry to help locate a buyer. As a result, the Court concludes that under the Restatement (Second) of Agency § 80, the question of whether Pittock and Thornton were Thompson's subagents presents a fact issue to be resolved by the jury.

■ A principal has the same liability to third parties for the commission of torts by his subagents as he has for the tortious acts of his agents. Restatement (Second) of Agency §§ 255 and 264. As noted previously in this Recommendation, a variety of factual scenarios will give rise to vicarious liability of a principal for the fraud of agents and subagents. For example, vicarious liability may be imposed (a) where the principal knows of and encourages the fraudulent behavior of his agent; (b) where the principal accepts the fruits of the fraud with knowledge of the misrepresentations by which the fraud was accomplished; (c) where the principal exercises an inadequate amount of supervision over the agent; (d) where the principal places the agent in a position to commit the fraud. Restatement (Second) of Agency § 261; *King,* 701 F.2d at 1318; *Gilmore,* 502 F.2d at 1348. The evidentiary record here would allow the fact-finder to infer that Thompson had knowledge of the fraud or recklessly ignored information suggesting that fraudulent activity was occurring; that he encouraged the fraudulent behavior of his agents; and/or that he accepted the fruits of the allegedly fraudulent conduct of his agents and subagents.

Thompson's second argument premised on the adverse interest exception to vicarious liability is equally unconvincing. Indeed, it seems readily apparent that Thompson benefitted substantially from the efforts of Thornton and Pittock to locate a buyer for his Stat–Tech shares. Furthermore, application of the adverse interest exception is impacted by whether or not Thompson knew of and participated in the fraudulent scheme. As the Court has previously observed, the evidentiary record demonstrates that triable issues of fact remain regarding Thompson's knowledge and state of mind. As a result, Thompson's request for summary judgment on the VBW's vicarious liability claim should be denied.

### 6. The Trust's damage claim

Finally, Thompson has moved to strike a portion of the Trust's damage claim. Specifically, the Trust requests that it be awarded the value of the claims asserted in the Stat–Tech bankruptcy proceeding by shareholders for the lost value of their stock.[7] Thompson contends that the Trust has failed to produce sufficient evidence that the claimant-shareholders relied on any statements or misrepresentations by Thompson. The Trust responds by asserting that it is entitled to a presumption based upon a fraud-on-the-market theory that the claimant-shareholders relied on Thompson's alleged misrepresentations. Furthermore, argues the Trust, these damages are recoverable under its breach of fiduciary duty theory.

■ To prove a claim of fraud under Section 10(b) of the Securities Exchange Act of 1934, a plaintiff must demonstrate reliance on a defendant's representations in order to

---

**7.** The procedural posture of this damage claim makes for difficulties in the analysis of the legal issue presented by Thompson's motion. It bears some resemblance to a claim for indemnity, although the existence and amount of the underlying liability apparently has not been determined. It also bears some resemblance to a representa- tive action, and the Trust has treated this aspect of its damage claim as being akin to such an action. Thus, the Trust has acknowledged that its recovery is dependent upon whether the shareholder-claimants can sustain their claims against the Trust.

show a causal connection between the defendant's fraud and the plaintiff's injury. *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989–90, 99 L.Ed.2d 194 (1988). Under certain circumstances, however, the courts have applied a rebuttable presumption of reliance. For example, a presumption of reliance exists where the plaintiff purchased securities traded on an open, developed, and efficient market. In such a situation, a shareholder is entitled to rely on the efficacy of the market to properly evaluate all material information and reflect that information in the price of the stock. When a material misrepresentation is made, it operates as a fraud on the market, thus injuring anyone who relies on the market to accurately reflect all relevant information. *Id.* at 246–47, 108 S.Ct. at 991–92; *Hurley v. F.D.I.C.,* 719 F.Supp. 27, 33 (D.Mass.1989).

█ In order to take advantage of a fraud-on-the-market theory, the plaintiff must plead and prove that the securities in question were traded on an efficient market. *Bank of Denver v. Southeastern Capital Group, Inc.,* 763 F.Supp. 1552, 1557 (D.Colo. 1991). The efficient market requirement is a necessary underpinning of the fraud-on-the-market theory, because "[a]n inefficient market, by definition, does not incorporate into its price all available information about the value of a security." *Freeman v. Laventhol & Horwath,* 915 F.2d 193, 198 (6th Cir.1990). An efficient market is one which rapidly reflects new information in the price of the stock. It is almost always "developed," in the sense that the market is characterized by a relatively high level of activity and frequency, and for which trading information is widely available. *Id.* Thus, the factors that identify an efficient market are (a) a large weekly trading volume; (b) the existence of a significant number of reports by securities analysts; (c) the existence of market-makers and arbitrageurs in the security; (d) the eligibility of the company to file an S–3 Registration Statement; and (e) a history of immediate movement of the stock price caused by unex-

pected corporate events or financial releases. *Id.* at 199; *O'Neil v. Appel,* 165 F.R.D. 479, 500–01 (W.D.Mich.1996); *Cammer v. Bloom,* 711 F.Supp. 1264, 1286–87 (D.N.J.1989).

The evidentiary record in the instant case reveals little concerning the trading activity in Stat–Tech stock. We are informed that there are Colorado brokers who serve as market-makers. On the other hand, there is no evidence regarding trading volume; no evidence as to whether any analysts tracked the company; no evidence as to whether the company was eligible to file an S–3; and no evidence regarding the history of stock price movements. In short, the Trust has made essentially no attempt to present evidence to establish the efficiency of the market for Stat–Tech stock.

█ The Trust asserts that because Stat–Tech stock was traded on the NASDQ, this, *ipso facto,* renders the market efficient. The Court rejects the Trust's position. Certainly, while a stock traded on the NASDQ may have an efficient market, this is not automatically the case. Where a stock is traded is not the crucial issue. The important question is whether trading in the particular stock displays the identifying characteristics of an efficient market. *Hurley,* 719 F.Supp. at 33; *Harman v. LyphoMed, Inc.,* 122 F.R.D. 522, 525 (N.D.Ill.1988).[8]

The Trust also asserts that it may recover the value of the shareholders' claims without proof of reliance under its breach of fiduciary duty theory. The Trust's brief fails to explain how this is so. The claimant-shareholders cannot sustain their claims without proof that they were the victims of a securities fraud. Such proof will require evidence of reliance. If evidence of reliance is not forthcoming, the claims of these shareholders presumably will be rejected, in which case, the Trust will have sustained no damages as a result of said claims.

Although it has not been raised by either side, one final matter concerning the issue of

---

**8.** A fraud-created-the-market theory provides another basis for a presumption of reliance. The Trust does not argue such a theory, and it appears that it would not apply here. A fraud-created-the-market theory requires proof that a market for otherwise worthless securities was created by the defendant's fraudulent conduct. There is insufficient evidence in the present record to support an inference that Stat–Tech stock had no value whatsoever except that imparted to it by the alleged fraud of the defendants.

reliance should be considered. The United States Supreme Court has held that a presumption of reliance exists in cases involving material omissions. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). In other words, where the plaintiff's securities fraud claim is premised on nondisclosure rather than affirmative misrepresentations, no proof of actual reliance is required. *Id.* at 153, 92 S.Ct. at 1472. The United States Court of Appeals for the Tenth Circuit has not definitively considered how the *Affiliated Ute* presumption applies in cases involving allegations of both affirmative misrepresentations and nondisclosure. However, several Circuits have held that the *Affiliated Ute* presumption is inapplicable where the case is predominantly based on misrepresentations rather than omissions. *E.g., Cavalier Carpets, Inc. v. Caylor,* 746 F.2d 749, 755–56 (11th Cir.1984); *Huddleston v. Herman & MacLean,* 640 F.2d 534, 547 (5th Cir.1981), *aff'd in part, rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). At least one Circuit has strongly suggested that the presumption of reliance is inapposite in any case alleging both misrepresentation and nondisclosure. *Cox v. Collins,* 7 F.3d 394, 395 (4th Cir.1993).

In the case at bar, no great difficulty is presented in determining that the Trust's securities claims primarily involve misrepresentation as opposed to concealment. Although the Fourth Amended Complaint alleges both misrepresentations and omissions, it is the fraudulent financial information in the 10–Ks that forms the principal bases for the Trust's fraud theories. As a result, the Trust cannot rely on *Affiliated Ute* to avoid presentation of reliance evidence in conjunction with its federal securities claims.

The state securities claims, however, present a more difficult problem, largely because of the Colorado Supreme Court's decision in *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095 (Colo.1995). In *Rosenthal,* the trial judge dismissed portions of a class action securities case for failure to state a claim on the ground that the complaint failed to allege reliance.[9] The Colorado Court of Appeals affirmed the dismissal of the securities claims, holding that they primarily related to misrepresentations rather than omissions and, thus, plaintiffs could not rely on an *Affiliated Ute* presumption. *Rosenthal v. Dean Witter Reynolds, Inc.,* 883 P.2d 522 (Colo.App.1994). The Colorado Supreme Court granted certiorari and reversed. The direct basis for the high Court's decision was that reliance need not be pleaded in order to avoid dismissal under C.R.C.P. 12(b)(5).[10] However, in what appears to be *dicta,* the Court flatly rejected the misstatements/omissions dichotomy as it relates to the matter of reliance under the Colorado Securities Act:

> The plain language of our statutes, however, draws no distinction between a person who 'make[s] any untrue statement of a material fact,' versus one who 'omit[s] to state a material fact necessary in order to make the statements made ... not misleading.' § 11–51–123(*l* )(b). Therefore, we refuse to recognize a misstatement/omissions dichotomy and disapprove of any reading of the Securities Act of 1981 that results in such a practice.

*Id.* at 1104.

What is left unsaid in *Rosenthal* is exactly how the Colorado Supreme Court intends to apply the *Affiliated Ute* exception. Although certainly not free from doubt in light of Colorado Supreme Court's failure to expressly enunciate an alternative to the "misstatement/omissions dichotomy," it appears that Colorado would apply the *Affiliated Ute* presumption to any case where omissions are alleged. This, of course, is contrary to the generally recognized federal rule. As a result, the Court finds and concludes that the Trust may pursue its claim for stockholder-claimant damages under the Colorado Securities Act.

Based on the foregoing, it is hereby RECOMMENDED that:

1. The Motion of Schneider Securities, Inc. to Dismiss for Failure to File Certificate of Review be DENIED;

---

9. The trial court also declined to certify the case as a class action. This aspect of the case, however, is not material to the issue presented here.

10. Because we are now at the summary judgment stage in the instant case, we are concerned with the evidentiary record rather than with the sufficiency of the pleadings.

2. Defendant Schneider Securities, Inc.'s Resubmitted Motion for Summary Judgment be GRANTED as to the plaintiffs' aiding and abetting claims under the Colorado Securities Act, and that the Motion be DENIED in all other respects; and

3. Defendant Hayden H. Thompson's Motion for Summary Judgment be DENIED.

It is ORDERED that, pursuant to Fed. R.Civ.P. 72(b), any party objecting to the Recommendation in this matter shall, within ten days after service of this Recommendation, serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Any objections must specifically identify those findings and recommendations to which the objections are being made. Failure to file a timely written objection will bar the parties from a *de novo* determination or appeal of the findings, legal conclusions, and recommendations herein by the District Court Judge.

DATED THIS 9th DAY OF JUNE, 1997.